IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


CHRIS A. STILLS                                                    PLAINTIFF

           v.                      Civil No.  15-3019

DR. JOHN KEVIN RICHTER,
Carroll County Detention Center (CCDC);
NURSE CRYSTAL BRENTON,
CCDC; SERGEANT JOHN CRIBBS, CCDC;
SERGEANT ANDREA MORRELL, CCDC;
JAIL ADMINISTRATOR DANNY HICKMAN,
CCDC; and SHERIFF RANDY MAYFIELD                                   DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action brought by the Plaintiff pursuant to 42 U.S.C. § 1983.  The

Plaintiff proceeds *pro se* and *in forma pauperis.*

The claims at issue in this case occurred while the Plaintiff was incarcerated in the Carroll

County Detention Center (CCDC).  Plaintiff is not currently incarcerated.

While at the CCDC, Plaintiff contends his civil rights when he was denied adequate medical

care.  On October 5, 2015, the Defendants filed a Motion for Summary Judgment (Doc. 15).  A

hearing was scheduled for November 17, 2015, to allow the Plaintiff to respond orally to the Motion.

Plaintiff appeared at the hearing on November 17, 2015, and responded orally to the Summary

Judgment Motion.   The Motion is now before the Court for issuance of this report and

recommendation.

### 1.  Background

Plaintiff was incarcerated in the CCDC from December 7, 2014, until March 16, 2015.  Doc.

-1-

17-4 at 1; Doc. 17-1 at 2.[1]  He  has Hepatitis C, is bi-polar, and suffers from a seizure disorder. Plaintiff indicated he brought his medications and his medicaid card with him to the jail.

Plaintiff first saw Nurse Brenton on November 10, 2014.  Doc. 17-6 at 1.  Plaintiff contends Nurse Brenton denied him medication for Hepatitis C based on the cost of the interferon.[2]

Nurse Brenton's notes reflect that Plaintiff reported having Hepatitis C, having seizures from not taking his medication, and had been on medication for bi-polar disorder for several years.  Doc. 17-6 at 1.  Her notes indicate Plaintiff believed he may have had a seizure while sleeping that day but otherwise had not had a seizure in two to three years.  *Id.*

On December 17, 2015, Plaintiff was seen by Dr. Richter.  Doc. 17-6 at 4.  During the visit, Plaintiff testified that Nurse Brenton was rude and unprofessional.  Plaintiff testified that he advised the doctor that he had testified positive for Hepatitis C.  Plaintiff indicated he wanted to be treated with interferon.  Plaintiff indicated there was no real discussion about treatment options; however, the doctor did order blood tests to be done in two months.  The doctor also authorized the Plaintiff to continue on his current medications.  *Id.*

Plaintiff asked about being released on his own recognizance (OR) so that he could seek medical treatment.   Nurse Brenton responded that even if Plaintiff only had three days to live he would not be released on his own recognizance.  Plaintiff testified he know the doctor had to write the prescriptions.  Although he did not know it at the time, Plaintiff testified he eventually learned that neither the nurse nor the doctor had anything to do with setting bond or releasing him on his own recognizance.

---

[1]The Court will refer to the exhibits by the CM/ECF document number and page.

[2]Interferon comes in various combinations in injection form and is used to "treat chronic (long term) hepatitis C infection in people who show signs of liver damage."  https://www.nlm.nih.gov/medlineplus/druginfo/meds/a690006.html (accessed December 21, 2015).

On January 18, 2015, Plaintiff was seen by Dr. Richter.  Doc. 17-6 at 10.  The doctor noted that Plaintiff had concerns about his Hepatitis C and reported that the Meloxicam[3] was not helping with his chronic pain.  *Id.*  The doctor discontinued the Meloxicam and noted that Plaintiff would seeks treatment for Hepatitis C upon his discharge.  *Id.*

Plaintiff testified he saw the doctor again on January 21, 2015, and the prescription for Seroquel[4] was increased, Celexa[5] was decreased, and an ankle brace/split was prescribed.  Doc. 17-4 at 23 (slip on ankle); Doc. 17-6 at 2 (medication); Doc. 17-5 at 5 (doctor's notes).  The nurse was instructed to obtain Plaintiff's records regarding his prescription for Xanax.[6]  Doc. 17-6 at 2.

Plaintiff testified he asked Sergeant Cribbs, Sergeant Morrell, Danny Hickman, and Sheriff Randy Mayfield, to be released on an OR bond.  Plaintiff indicated these individuals were named as Defendants solely because he was not given an OR bond.

Plaintiff testified his medications were increased and sometimes he got the medications and sometimes he did not.  Each day when medication was dispensed Plaintiff testified he had to sign for it before he took it.  There were times when he just did not get the medication.  Plaintiff, however, could not specify any dates or the number of times he failed to receive his medication.

On January 19, 2015, Plaintiff complained he was not getting all the medication that was

---

[3]Meloxicam is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). https://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html (accessed December 22, 2015).

[4]Seroquel is a brand name for the drug Quetiapine.  Quetiapine tablets and extended-release (long-acting) tablets are used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions).  https://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html (accessed December 22, 2015).

[5]Celexa is a brand name for the drug Citalopram.  Citalopram is used to treat depression. https://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html (accessed December 22, 2015).

[6]Xanax is a brand name for the drug Alprazolam.  Alprazolam is used to treat anxiety disorders and panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks). https://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html (accessed December 22, 2015).

prescribed to him.  Doc. 17-4 at 15.  Plaintiff testified that Tramadol[7] was one of the prescriptions that he brought to the jail.  *Id.*  A sergeant responded to the grievance stating that per Dr. Rains Plaintiff would receive hydrocodone until it was gone and then would receive Tramadol.  *Id.* Plaintiff testified he did not know who Dr. Rains was.

The records indicate that a Complete Blood Count (CBC)  with differential blood test was run at Mercy Hospital in Berryville, Arkansas, on February 3, 2015.  Doc. 17-6 at 6-8.  According to Dr. Richter, the blood lab work results "were better than they were when performed in November 2014."  Doc. 17-9 at 2.

Plaintiff recalled being shown the results by the doctor.  Plaintiff believed the results were high in a number of areas and he was worried.  The doctor increased the dosage on Xanax and added meloxicam.

On February 5, 2015, Plaintiff submitted a grievance complaining that he had not received the meloxicam.  Doc. 17-4 at 34.  He believed he should be getting it four times a day.  *Id.*  He did not say anything about Hepatitis C.  In response, he was told that medication had just been delivered and had not been placed in his folder yet.  *Id.*

Plaintiff testified that he had paperwork from his family doctor saying that he had Hepatitis C.  Plaintiff indicated he also signed a release so jail medical staff could obtain his medical records.

On February 9, 2015, Plaintiff submitted a grievance saying he needed to be treated for Hepatitis C because his levels were nine times what they should be.  Doc. 17-4 at 41.  He indicated he had attempted to get released so he could seek treatment.  *Id.*  Plaintiff testified he was:  getting

---

[7]Tramadol is used to relieve moderate to moderately severe pain.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (accessed December 22, 2015).

worse everyday; losing weight; and stressed out over it.  *Id.*  Plaintiff testified the doctor said the County could not afford the thousands of dollars it cost to provide interferon treatment for six months.

On February 11, 2015, Plaintiff testified he was refused OR because of charges in another county.  *See also* Doc. 17-4 at 44.  When he was released from jail on March 16, 2015, Plaintiff testified the County kept all medication.  Two days later, Plaintiff testified he had a seizure and ended up in the Eureka Springs Hospital.  Plaintiff thought the jail would send the medication home with him.

After the hearing, Plaintiff submitted a letter dated November 10, 2014, from Dr. R. Britt Mahan.  The letter has been marked as Plaintiff's Exhibit 1 and will be filed of record.  The letter states the results of a Hepatitis C RNA PCR, Quantative test.  *Id.*  Dr. Mahan commented that the results meant that the Plaintiff has a "small to medium amount of hepatitis C virus in [his] blood stream."

Dr. Mahan's records also contain the results of an ultrasound of the liver performed on August 5, 2014.  *Id.* at 51-52.  The results were:

> Subtle undulation of the liver surface is present concerning for but not diagnostic of hepatic fibrosis.  No other evidence of hepatic fibrosis is seen and no evidence of portal venous hypertension is present.  No sonographic evidence of hepatocellular carcinoma is seen.  Hepatocellular disease including infectious etiologies obviously not excluded.  Remainder of study within normal limits as described.

Doc. 17-6 at 52.

## 2. Summary Judgment Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### 3. Discussion

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)(*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims.  *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).  The deliberate indifference standard has both an objective and a subjective component.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

"An objectively serious medical need is one that either has been diagnosed by a physician

as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity

for a doctor's attention." *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir.

2008)(internal quotation marks and citation omitted).   To prevail on his claim, Plaintiff must

demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually

knew of the medical need but, subjectively, was deliberately indifferent to it.   *Grayson v. Ross*, 454

F.3d 802, 808-09 (8th Cir. 2006).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more

blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing

about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th

Cir. 2011)(internal quotation marks and citation omitted).   The deliberate indifference standard is

not met by the exercise of professional judgment in refusing to implement an inmate's requested

course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09 (8th Cir. 2009).   Nor is the standard met

by demonstrating a doctor committed medical malpractice. *Jackson v. Buckman*, 756 F.3d 1060,

1065-66 (8th Cir. 2014).

"[D]eliberate indifference in the level of care provided [may be shown] in different ways,

including showing grossly incompetent or inadequate care, showing a defendant's decision to take

an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or

denied access to medical care."   *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)(citations

omitted).   Additionally, "in cases where some medical care is provided, a plaintiff is entitled to prove

his case by establishing [the] course of treatment, or lack thereof, so deviated from professional

standards that it amounted to deliberate indifference." *Id.* (internal quotation marks and citations

omitted).

### (A).  Non-medical Defendants

Defendants Sergeant Cribbs, Sergeant Morrell, Jail Administrator Danny Hickman, and Sheriff Randy Mayfield, are entitled to judgment in their favor.  Plaintiff testified he named these individuals as Defendants only because they did not give him an OR bond.  The setting of bail rests within the discretion of the trial court.  *See e.g., Foreman v. Arkansas*, 317 Ark. 146, 148 (1994).

To the extent Plaintiff is asserting a denial of medical care claim against these Defendants, the claim fails.  There is no indication any of these Defendants were involved in making decisions regarding the Plaintiff's medical care.  With respect to the non-medical Defendants, liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action.  *See e.g., Ripon v. Ales*, 21 F.3d 805, 808-09 (8th Cir. 1994).  There is nothing in the summary judgment record that suggests the non-medical Defendants were involved in the decision of what medical care should be ordered for inmates in general or for the Plaintiff in particular.  *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).  General responsibility for supervising the CCDC is insufficient to establish personal involvement.  *Reynolds v. Dormice*, 636 F.3d 976, 981 (8th Cir. 2011).

### (B).  The Medical Defendants

Plaintiff's primary against Nurse Brenton is that she acted in a rude and unprofessional manner.  Mere taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v.*

-8-

*Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin v. Sargent*, 780 F.2d 1334, 1338-1339 (8th Cir. 1985)(being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).

The deliberate indifference standard requires more than unprofessional conduct or even medical malpractice. *See e .g., Popoalii v. Correctional Medical Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). There is no evidence suggesting anything more than a mere disagreement with treatment decisions. *See e.g., Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The same is true with respect to the Plaintiff's claim against Dr. Richter. The doctor ordered blood tests to monitor Plaintiff's Hepatitis C. According to Dr. Richter's affidavit, at his December 17, 2014, appointment with Plaintiff, he reviewed the blood tests performed on November 7, 2014, prior to Plaintiff's incarceration. Doc. 17-9 at 1. Dr. Richter indicated that labs every three months was standard protocol for a Hepatis C condition. *Id.* For this reason, Dr. Richter ordered labs to be taken in two months. In Dr. Richter's opinion the lab tests from February 2015 were better than the lab tests performed in November of 2014.[8] *Id.* at 2. Dr. Richter believed "[t]here was not an immediate threat of injury to Stills from the Hepatitis C that warranted treatment at that time." *Id.*

Plaintiff indicated repeatedly that he wanted to begin interferon treatment for Hepatitis C and

---

[8] It is not clear how the results on a Hepatitis C panel and a CBC panel are compared. However, even if the Court assumes for purposes of this motion that Dr. Richter ordered the wrong blood panel, this would at most amount to negligence. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976)(neither matters of medical judgment nor negligence is sufficient to constitute deliberate indifference).

that he was worried about his health and the state of his liver as a result of the Hepatitis C.  "[A] healthcare provider need not accept as true medical judgments offered by their patients but must make treatment decisions on the basis of many factors, only one of which is patient's input.  *Allard v. Baldwin*, 779 F.3d 768, 772-73 (8th Cir. 2015)(citations omitted).  Viewing the record in the light most favorable to the Plaintiff, Dr. Richter's treatment decisions were "not so ineffective as to be criminally reckless and therefore rise to deliberate indifference."  *Id.* at 773; *see also White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)("[p]hysicians are entitled to exercise their medical judgment").  Furthermore, even if we conclude for purposes of this motion that Dr. Richter's decisions were erroneous, "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014)(citations omitted).

Moreover, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted).  Plaintiff has presented no evidence that any delay attributable to the medical Defendants adversely impacted his prognosis.

With respect to Plaintiff's medication, the records indicate that medical staff obtained Plaintiff's prior records for review by Dr. Richter.  Doc. 17-6 at 14-60.  As outlined above, Dr. Richter authorized the continuation of Plaintiff's medications, changed the dosages in response to Plaintiff's concerns, and prescribed additional medication in an effort to control the Plaintiff's pain.  Docs. 17-6; 17-7; 17-8.  Although Defendants submitted the medication audit as an exhibit, Plaintiff did not point out any inaccuracies in the audit or draw the Court's attention to any specific days on

which he missed medication. *Zentmeyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir. 2000)(the occasional missed dose of medicine, without more, does not violate the Eighth Amendment); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987)(inmate with heart condition missed a morning dose of medication; no showing that this was an instance of callous disregard in the face of a pressing medical emergency); *Herndon v. Whitworth*, 924 F. Supp. 1171 (N.D. Ga. 1995)(occasional missed doses of medication do not implicate the Constitution).

### (C).  Official Capacity Claims

"Official-capacity liability under 42 U.S.C. § 1983 occurs when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Turner v. Mull*, 784 F.3d 485, 489 (8th Cir. 2015)(internal quotation marks and citation omitted).  "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009)(citation omitted).  With respect to his medical care, Plaintiff has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). Merely alleging that procedures were not followed or were inadequate in some way is insufficient. *Id*.  Plaintiff has not pointed to a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority in such matters." *Id*.

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id*. at 634 (internal quotation marks and citation omitted).

-11-

There is no genuine issue of material fact as to whether there is any widespread, persistent pattern of unconstitutional conduct.  The undisputed facts show that the medical information Plaintiff provided on being booked was given to medical personnel.  Thereafter, the Plaintiff was seen on a number of occasions by the nurse and/or doctor.  Additionally, the nurse responded to numerous grievances the Plaintiff submitted.  Clearly, this falls far short of suggesting the existence of an unconstitutional policy, custom, or practice.

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 15)  be **GRANTED.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of December 2015.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE